**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 96-cr-06020-ALTMAN**

**UNITED STATES OF AMERICA**,

*v.*

**SANTOS ACEVEDO**,

    *Defendant.*

_____/

**ORDER**

Our Defendant, Santos Acevedo, has filed a Motion for Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A) (the "Motion") [ECF No. 426]. After careful review, we **DENY** the Motion.

**PROCEDURAL HISTORY**

A federal grand jury returned an indictment, charging the Defendant with seven crimes: one count of conspiracy to racketeer ("RICO conspiracy"), in violation of 18 U.S.C. § 1962(d) (Count 1); two counts of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Counts 2 and 5); two counts of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951–52 (Counts 3 and 6); and two counts of using and carrying firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 4 and 7). *See* Indictment [ECF No. 3]. The Defendant went to trial where, on December 4, 1996, a federal jury found him guilty of all seven counts. *See* Verdict [ECF No. 165].

For these crimes, Judge Zloch sentenced the Defendant to "360 months [in prison] as to Count [1] and concurrent terms of 240 months as to each of counts 2, 3, 5 & 6." *See* Amended Judgment [ECF No. 212] at 2. Judge Zloch added that "Counts 2, 3, 5 & 6 are to run concurrently with the sentence imposed in Count 1." *Ibid.* "As to Count 4," Judge Zloch said, "the defendant is sentenced to 60 months . . . to run consecutively to the sentences imposed in Counts 1, 2, 3, 5 and 6." *Ibid.* And, as to Count 7, Judge Zloch made clear that "the defendant is [sentenced] to a term of 240

months to run consecutively to the sentences imposed in Counts 1, 2, 3, 4, 5 and 6." *Ibid.* The Defendant's cumulative sentence, then, was 660 months.

The Eleventh Circuit later affirmed the Defendant's conviction and sentence. *See United States v. Acevedo*, 250 F.3d 746, 746 (11th Cir. 2001), *cert. denied sub nom. Villarino-Pacheco v. United States*, 533 U.S. 963 (2001). The Defendant then filed two motions to vacate under 28 U.S.C. § 2255 [ECF Nos. 335 and 416]. Judge Zloch denied the first, *see* October 21, 2002 Order [ECF No. 352], and we rejected the second, *see* April 22, 2022 Order [ECF No. 418]. The Defendant has also filed a prior Motion for Sentence Reduction [ECF No. 419], which we likewise denied, *see* November 21, 2022 Order [ECF No. 423].[1]

In this new Motion, the Defendant asserts two "ground[s]" for relief. *First*, he argues that, "[d]ue to the changes in the legal landscape since his sentencing, [his] 660 months 'unusually long sentence' is greater than the sentence he would receive today and as a result establishes an 'Extraordinary and Compelling Reason' pursuant to U.S.S.G. § 1B1.13(b)(6)." Motion at 1. *Second*, he says that his "rehabilitation combined with his other factor warrant[s] a reduction of his sentence [under] U.S.S.G. § 1B1.13[ ](d)." *Ibid.*

In its Response in Opposition to the Defendant's Motion to Reduce Sentence (the "Government's Response") [ECF No. 435], the Government advances two arguments. *One*, it says that the Defendant "has not exhausted all his administrative rights to appeal[.]" *Id.* at 6–7. *Two*, it contends that, for several reasons, the "Defendant does not qualify for a sentence reduction under § 1B1.13(b)(6)." *Id.* at 7–13.

The Defendant has now submitted a Rebuttal to the Government's Response (the "Defendant's Rebuttal") [ECF No. 439], in which he says that he *has* exhausted his administrative

---

[1] This is an extremely abbreviated account of the post-judgment procedural history.

remedies because, "contrary to the [G]overnment's assertion, [he] did file[ ] a BP-9 and BP-10," and because "30 days did lapse since he submitted his BP-10." Defendant's Rebuttal at 2. To corroborate this claim, the Defendant attached copies of those two forms to his Rebuttal. *See id.* at 5, 7. The Rebuttal also clarifies the Defendant's argument—*viz.*, that we should "reduce his sentence after considering the almost 30 years of incarceration [he has served], the extra 15 years he is serving for count VII [the second § 924(c) violation], and [his] rehabilitation efforts." *Id.* at 2. He adds that, if he were sentenced today, he would "receive 5 years for his second 924(c) and not the 20 years he did receive[ ]. The extra fifteen years is what makes his sentence an 'unusually long sentence.'" *Ibid.*

## THE LAW

In adjudicating the Defendant's Motion, we proceed along the following four steps: *First*, because the defendant has brought the Motion himself, we must determine whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). *Second*, we must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Ibid.* *Third*, we must turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13(b). 18 U.S.C. § 3582(c)(1)(A)(i). And *fourth*, we ask whether the Defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2); *see also United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020) (Altman, J.) (applying this framework). A defendant's failure to satisfy any one of these requirements is sufficient to deny a § 3582(c)(1)(a) motion. *See United States v. Weems*, 477 F. Supp. 3d 1301, 1306 (S.D. Fla. Aug. 7, 2020) (Bloom, J.) ("[I]n order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant

compassionate release in this case; *and* (4) determine that Defendant is not a danger to the community." (emphasis added)).

## ANALYSIS

### I.    Exhaustion

At step one, we must verify that the Defendant has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A) (stating that a court "may not" modify a term of imprisonment until "*after* the defendant has *fully exhausted all* administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or *after* "30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" (emphases added)). "This language is unambiguous and may not be altered by judicial fiat." *United States v. Walker*, 2021 WL 1749976, at *2 (S.D. Fla. May 4, 2021) (Altman, J.); *see also United States v. Kranz,* 2020 WL 2559551, at *2 (S.D. Fla. May 20, 2020) (Rosenberg, J.) ("The language that Congress chose to use is clear and unambiguous. The Court cannot read exceptions into § 3582(c)(1)(A).")). The Defendant has met this requirement.

According to the Defendant, on November 13, 2023, he submitted a "Request to Staff to the Warden at F.C.I. Coleman Medium, where he is incarcerated." Motion at 2. And he's attached that request as an exhibit to his Motion. *See id.* at 12 (photocopy of the request). In that document, he wrote as follows:

> I am requesting that the Warden file on my behalf Reduction in Sentence Motion (RIS). § 3582(c)(1)(A) has been amended with USSG Amendment 814. The Sentencing Commission has expanded the 1B1.3 to include Changes in Law. This allows people serving an "Unusually Long Sentence" to get a sentence reduction if other people are getting shorter sentences for the same crime today. Additionally, the U.S. Sentencing Commission also implemented Amendment 821 (Retroactively) which address "Status Points" and "Zero-Point Offenders." I believe I qualify under these new amendments and seek a Reduction in Sentence. My RIS application is attached.

*Id.* at 12.[2]

In his Reduction-in-Sentence Application, the Defendant checked the "Other" box, indicating that "Extraordinary or Compelling Circumstance[s]" apply to his case and suggesting that he "would like to have a lesser sentence today under the new amendments 814 and 821." *Id.* at 13 (photocopy of the Reduction-in-Sentence Application). Just two days later—on November 15, 2023—the Warden of FCI Coleman denied the Defendant's request. *See id.* at 14 (photocopy of the denial). According to the Warden:

> Challenges to an inmate's sentence length directly related to their conviction are not considered extraordinary or compelling circumstances by the Bureau of Prisons. These challenges should be challenged by direct appeal or a habeas corpus action. After careful consideration, your request is denied.
>
> *If you are not satisfied with this response to your request, you may appeal this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.*

---

[2] The Defendant's reliance on the "Zero-Point-Offenders" amendment is misplaced because the Defendant had twelve criminal-history points (not zero) when Judge Zloch sentenced him. *See* PSI [ECF No. 437-1] ¶ 69. And the Defendant's oblique reference to the "Status-Points" amendment fares no better. For one thing, the Defendant never actually suggests that he should receive a reduction under that amendment, *see generally* Motion (never mentioning Amendment 821 (Part A) or U.S.S.G. § 4A1.1(e))—and it's not our job to make arguments for him, *see EA Tapping Servs., LLC v. CDM Constructors Inc.*, 2021 WL 1985338, at *9 (M.D. Fla. Feb. 23, 2021) (Mendoza, J.) (the district court "will not make arguments for [a party]"); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed . . . by a *pro se* litigant are deemed abandoned." (cleaned up)). For another, any such argument would've failed. The Defendant (it's true) received two status points for "having committed the instant offense while under a criminal justice sentence of probation which was imposed in Broward County Circuit Court." PSI ¶ 69. And, if he were sentenced today, he would have received only one status point, *see* U.S.S.G. § 4A1.1(e)—rather than two. But, since the Defendant was assessed *twelve* criminal-history points at his sentencing, this one-point adjustment would reduce his total points only from twelve to eleven—which would keep him at a criminal-history category V, the same criminal-history category he was in at his original sentencing. *See* U.S.S.G. § 5A (1995) (showing that a defendant with 10–12 criminal history points falls into criminal-history category V); U.S.S.G. § 5A (2023) (same). Because the Defendant's new guidelines range would thus be the same as his original guidelines range, he isn't entitled to a reduction under Amendment 821 (Part A). *See* 18 U.S.C. § 3582(c)(2) ("[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a *sentencing range* that has *subsequently been lowered* by the Sentencing Commission . . . the court may reduce the term of imprisonment[.]" (emphasis added)).

*Ibid.* (emphasis added). The Defendant appears to have appealed that decision by filing the BP-9 form on December 1, 2023. *See* Defendant's Rebuttal at 5. The Warden denied that appeal, too—this time on December 11, 2023. *See id.* at 6 ("[Y]our Request for an Administrative Remedy is denied. If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE[.]"). The Defendant then filed what he describes as a BP-10 form on December 21, 2023, *see id.* at 7, but he's apparently received nothing in return, and more than thirty days have passed since he submitted that BP-10. Because the Defendant appears to have exhausted his administrative remedies, we'll address the Motion on its merits.

## II.     The § 3553(a) factors

At step two, we must "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). But we've done this before and found that those factors *don't* justify a reduction in *this* Defendant's sentence. As we explained:

> The first factor—the "nature and circumstances of the offense," § 3553(a)(1)—weighs heavily against early release. Acevedo, recall, was convicted of conspiracy to commit racketeering, conspiracy to commit an armored car robbery, and armored car robbery. . . . And we don't think we're going out on a limb by characterizing these as very serious crimes. This first factor, in short, counsels against early release.
>
> The second factor—Acevedo's "history and characteristics," § 3553(a)(1)—likewise cuts against the relief he's seeking. When Judge Zloch sentenced him for these crimes, he had 12 criminal history points and qualified for a criminal history category of V. . . . Acevedo's criminal history thus provides no basis for early release.
>
> Most of the remaining factors—the need for the sentence imposed to "reflect the seriousness of the offense," to "promote respect for the law," to "provide just punishment for the offense," and to "protect the public from further crimes of the defendant," § 3553(a)(2)—likewise weigh against release. Acevedo wants us to ignore the seriousness of his crimes and to cut out the remaining 46% of his sentence. This we will not do. Acevedo's criminal conduct in this case strongly suggests that he doesn't obey the law and that he doesn't respect the law. To release him now would thus send precisely the wrong message: that violent crimes aren't that serious, that the dangers violent criminals present to our communities are overblown, and that the penalties set out in our criminal laws needn't be strictly followed. Releasing Acevedo now, in other words, would *decrease*, rather than increase, the citizenry's respect for the law.

The § 3553(a) factors thus weigh decisively against early release.

November 21, 2022, Order [ECF No. 423] at 7–9. Because everything we said two years ago remains equally true today, we reiterate our view that the § 3553(a) factors weigh decisively against early release. *See United States v. Tinker*, 14 F.4th 1234, 1239 (11th Cir. 2021) ("Even if a district court were to find that 'extraordinary and compelling reasons' justify early release, the result would be the same—denial—where the § 3553(a) factors militate against a sentence reduction."). In the interest of completeness, though, we'll analyze the Defendant's request under the final two steps.

### III.    The "extraordinary-and-compelling-reasons" test

The Defendant (probably) hasn't shown that "extraordinary and compelling reasons warrant compassionate release in this case[.]" *Weems*, 477 F. Supp. 3d at 1306; *see also Stuyvesant*, 454 F. Supp. 3d at 1241 ("The Defendant bears the burden of establishing . . . that his circumstances qualify as 'extraordinary and compelling reasons[.]'" (quoting *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)). The Defendant relies on U.S.S.G. § 1B1.13(b)(6), *see* Motion at 1, 3–6, which provides as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason [for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)], but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).[3]

---

[3] The Government argues that "[t]he Sentencing Commission overstepped its authority in enacting subsection (b)(6)." Government's Response at 8. Because this same argument is currently pending before the Eleventh Circuit, *see United States v. Rizo*, No. 24-11349—and since we're denying the Defendant's Motion on *other* grounds—we won't delve into it here.

Our Defendant has served more than ten years in prison—in fact, he's served 29 years and 9 months. *See* Government's Response at 4. And there *has* been a "change in the law." As the Defendant points out, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 403, 132 Stat. 5194, 5221–22 (codified at 18 U.S.C. § 924(c)), "expressly prohibits 'stacking' of § 924(c) charges arising from the same crime," *United States v. Bizzell*, 2024 WL 1832995, at *4 (M.D. Fla. Apr. 26, 2024) (Scriven, J.); *see also United States v. Hewlett*, 2020 WL 7343951, (N.D. Ala. Dec. 14, 2020) ("In 2018, Congress passed the First Step Act and changed the language of Section 924(c) to avoid the 'stacking' of Section 924(c) convictions charged in the *same indictment*; under the First Step Act, only a Section 924(c) violation committed after a prior conviction for a Section 924(c) offense has become final triggers an extra-long consecutive mandatory minimum sentence." (emphasis added)). Again, our Defendant was convicted of two § 924(c) violations (Counts IV and VII) from the same indictment—and, for these crimes, he received consecutive 5-year and 20-year sentences. *See* Amended Judgment in a Criminal Case at 2. So, although "Congress . . . did not make this change retroactive," *Bizzell*, 2024 WL 1832995, our Defendant—if sentenced today—*might* receive a lesser sentence—*viz.*, five years for Count IV and *five years* for Count VII, to be served consecutively (as opposed to five years and *twenty* years). *See id.* at *5 (conducting this same analysis and finding that, "if Mr. Bizzell were convicted today, his sentence on the first § 924(c) offense (for carrying and using the firearm) would be 5 years, plus 5 years on the second, and another 5 years on the third, and the combined sentence on Mr. Bizzell's three § 924(c) convictions would be 15 years").

We say "might" because this approach assumes that we would impose the mandatory *minimum* for each of the Defendant's § 924(c) convictions—an assumption that may well be misplaced, given that (1) "each § 924(c) conviction carries a maximum term of life imprisonment," and (2) the Government, at the original sentencing, sought (and the Court imposed) an upward departure "based on victim related adjustments and the robberies' impact on their work place environment."

Government's Response at 11; *see also* Judge Zloch's Statement of Reasons [ECF No. 435-1] at 2 ("The court departed upward based upon the government's motion pursuant to § 5K2.0."). Because we (like Judge Zloch) likely would grant an upward departure, we cannot say that there would be "a gross disparity between the sentence being served and the sentence *likely* to be imposed" in a hypothetical re-sentencing "after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6) (emphasis added). The Defendant has therefore failed to show an "extraordinary and compelling" reason for his requested reduction.

IV.     **The Defendant is a danger to the community.**

Finally, even if the Defendant had demonstrated that there were extraordinary and compelling reasons for his release—*and* that the § 3553 factors counseled in favor of altering his sentence—we *still* wouldn't grant him relief. That's because the Defendant hasn't shown that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(a)(2); *see also Stuyvesant*, 454 F. Supp. 3d at 1241 ("The Defendant bears the burden of establishing . . . that he no longer represents a danger to any other person or the community." (cleaned up)). In making this determination, we consider the factors laid out in 18 U.S.C. § 3142(g), which include "the nature and circumstances of the offense charged," "whether the offense is a crime of violence," and whether the offense "involves a . . . firearm[.]" in 18 U.S.C. § 3142(g)(1). Here, the Defendant was convicted of robbing not one but two Brinks armored cars (on separate occasions). *See* Judge Zloch's Statement of Reasons at 2. And, during each robbery, the Defendant used a firearm. *Ibid.* ("Firearms were placed to the Driver's head through the porthole and the messenger's head was placed on the ground behind the right rear tire of the truck.") The Defendant, in short, has failed to show that he no longer poses a danger to the community. So, we can deny his Motion on this ground too.

V.     **The Defendant's rehabilitation**

Resisting all this, the Defendant contends that his "rehabilitation combined with his [extraordinary-and-compelling-reasons argument] warrant a reduction of his sentence." Motion at 1. But "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13(e); *see also United States v. Razz*, 2024 WL 1367150, at *4 (S.D. Fla. Apr. 1, 2024) (Ruiz, J.) (noting that a district court "is unable to grant a sentence reduction based *solely* on Defendant's alleged rehabilitation" (emphasis added)); *United States v. Lopez*, 2024 WL 1979437, at *4 (S.D. Ala. May 3, 2024) (finding that the defendant had not "describe[d] a *degree* of rehabilitation that could contribute to the establishment of an extraordinary and compelling reason for a sentence reduction" (emphasis added)).

We accept the Defendant's claims that "he has engaged in numerous educational and rehabilitative programs that have provided skills that will benefit him upon release," that he has "excellent work evaluations documented in his BOP file," and that he has "enrolled in numerous courses over the years." Motion at 7. We also recognize that, given his age (63), the Defendant is less likely to recidivate than he may have been as a younger man. At the same time, the Defendant hasn't always behaved in custody, and we won't ignore the many infractions he's accumulated over the years—including a March 29, 2018 infraction for "refusing work"; a January 25, 2011 violation for "failing to follow safety regulations"; an April 26, 2006 infraction for "refusing to obey an order" and for "failing to follow safety regulations"; a February 27, 2006 violation for "indecent exposure"; and a November 19, 1995 infraction for "refusing work" and "refusing to obey an order." Chronological Disciplinary Record [ECF No. 435-3] at 1–2. While we recognize that none of these offenses involved violence—and that six years have passed since the most recent violation—the Defendant's custodial disciplinary record undermines his claim to full rehabilitation. At all events, "even if [we] were to assume that [the Defendant] has demonstrated extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)," we'd still find that "compassionate release would be inappropriate upon

consideration of the section 3553(a) factors." *United States v. Denton*, 2024 WL 330830, at *5 (N.D. Ala. Jan. 29, 2024) (Blackburn, J.).

* * *

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Motion for Reduction of Sentence under 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on August 20, 2024.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Santos Acevedo, *pro se*